Dear Karl:
This responds to your memorandum concerning the proposed exchange of land within the boundaries of the Bogue Chitto National Wildlife Refuge and requesting an opinion of this office.
You advise that the State owns five tracts of bottom land hardwood totaling 675 acres within the refuge, and that the State Land Office has leased this land to the U.S. Fish and Wildlife Service (USFWS) for more than ten years. USFWS desires to acquire fee simple title to this land, but federal guidelines prevent a direct purchase from the State.
In order to assist USFWS, and to secure additional lands for the State, the State Land Office has tentatively agreed to exchange the 675 acres for 485 acres to be acquired by The Wildlife Refuge Inc., a registered Louisiana non-profit wildlife conservation corporation. The 485 acre tract is an environmentally sensitive and threatened habitat presently owned by private interests, but which is readily available for public use and timber management.
You advise that the tracts to be exchanged are of equal value and that no expenses or costs will be incurred by the State, since USFWS has agreed to pay all reasonable closing costs involved in the exchange. The exchange would involve a transfer of the 675 acres owned by the State of Louisiana to The Wildlife Refuge, Inc., which would acquire the 485 acres from the private interest and transfer this tract to the State. Thereafter, the 675 acres previously owned by the State would be transferred to USFWS and continued for use as a public recreation area.
Because you have advised that the 485 acre tract to be acquired is an environmentally sensitive and threatened habitat, but is also readily available for public use and timber management, we recommend an environmental and ecological evaluation of the subject tract to assess the nature and extent of any special problems which may inhibit state use prior to acquisition.
While the decision to engage in this transaction is essentially a policy decision to be made by the administration, we recommend your consideration of the following procedures and statutory requirements, to-wit:
 1. The five tracts to be sold by the State should be noticed to the Parish and municipal authorities, if any, in which the property is located pursuant to La. R.S. 41:139;
 2. The Division of Administration is required to prepare a land management evaluation report setting forth recommendations for the best use or disposition of property which may be designated non-essential by any agency, which report is required to filed with the House and Senate Natural Resources Committee and delivered to the members of those committees within whose districts the immovable property is located. La. R.S. 41:140. In this instance, the property is being exchanged for property of like kind and character to be put to the same use, i.e., public use, recreation and timber production. Hence, it is not regarded as being "non-essential", and following the exchange, both tracts will be similarly dedicated to public use. Under these circumstances, perhaps no written notice to the legislative committees is required, but nevertheless we draw your attention to the foregoing statutory provisions;
 3. Sales are to be conducted under La. R.S. 41:131 et seq., or La. R.S. 47:2189, where applicable;
 4. The property appraisal should follow the procedures set forth by the Division of Administration in its Land Acquisition and Related Procedures Guidelines, paragraph III, entitled Procedure for Selection of an Appraiser;
 5. Mineral rights on property sold, transferred are exchanged by the State shall be reserved under Article IX, Section 4(A) of the Louisiana Constitution of 1974. While this provision should be self-effectuating, we recommend a specific mineral reservations clause in the act of transfer. In the past, we have had with such transfers which have resulted in many years of litigation due to the lack of specificity concerning mineral rights;
 6. In the event that the lands to be sold include any waterbottoms now or formerly navigable and owned by the State by virtue of its inherent sovereignty, these waterbottoms should be reserved to the State. Should the lands to be sold adjoin navigable waters and it is the intent to transfer the full extent of the property to the waters edge, and assuming this to be the case, the transfer should recite that the described land and all other lands between the said property and the mean low watermark of the navigable rivers and streams appertaining thereto or mean highwater of any state-owned lakes, bays or arms of the sea appertaining thereto, if any, are to be transferred.
We hope this information is of assistance to you and look forward to working with you on this important transaction.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: GARY L. KEYSER, CHIEF Lands and Natural Resources Section
GLK/scp